IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JAJUANA WALKER, on behalf of herself and all others similarly situated, | ) ) ) Case No. |
| Plaintiff, | ) ) ) |
| v. | ) ) ) CLASS ACTION |
| SCREENING REPORTS, INC. | ) ) JURY TRIAL DEMANDED |
| Defendant. | ) ) |

## CLASS ACTION COMPLAINT

Plaintiff, Jajuana Walker, on behalf of herself and others similarly situated, complains against Screening Reports, Inc. ("Screening Reports" or "Defendant"), alleging claims under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*:

## INTRODUCTION

1. Plaintiff brings this FCRA action against Screening Reports, Inc., a consumer reporting agency that inaccurately reported her criminal record. A landlord used Defendant's inaccurate report to deny Plaintiff subsidized housing she had waited six years to obtain.

2. After learning of the inaccurate report, Plaintiff faxed a dispute letter to Defendant, explaining the inaccuracies, asking Defendant to correct her report, and requesting a copy of her consumer file. Defendant ignored this letter, so Plaintiff faxed a second, nearly identical, dispute letter and request for her consumer file. Defendant also ignored this second letter.

3. Plaintiff now seeks individual relief under the FCRA against Defendant, for failing to maintain reasonable procedures to ensure maximum possible accuracy, 15 U.S.C. §

1

1681e, failing to twice make required consumer disclosures under 15 U.S.C. § 1681g, and failing to provide notice of the outcome of her two disputes, 15 U.S.C. § 1681i.

4. Defendant's practice of ignoring consumer disputes is routine and systematic. As a result, Plaintiff claims damages on behalf of herself and a class of similarly situated individuals who disputed the completeness or accuracy of information contained in their consumer report and never received notice of the dispute outcome after Defendant completed its reinvestigation. 15 U.S.C. § 1681i.

## PARTIES

5. Plaintiff, Jajuana Walker, is a resident of Chicago, Illinois.

6. Ms. Walker is a natural person and a "consumer" as defined in 15 U.S.C. § 1681a(c).

7. Screening Reports, Inc. is a Florida corporation.

8. Defendant is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f).

9. Defendant regularly, and in the course of its ordinary business, disburses consumer reports to third parties for monetary compensation.

## JURISDICTION

10. Plaintiff brings this action under 15 U.S.C. § 1681 *et seq.*, and thus the United States district courts have subject matter jurisdiction. 28 U.S.C. § 1331.

11. Plaintiff may bring a FCRA action "in any appropriate United States district court, without regard to the amount in controversy." 15 U.S.C. § 1681p.

12. Defendant transacts business in the Northern District of Illinois, and venue is thus proper under 28 U.S.C. § 1391(d).

## FACTS

13. In 2013, Plaintiff applied for a subsidized, project-based housing unit through the Chicago Housing Authority ("CHA"). Due to the lack of affordable housing in Chicago, Ms. Walker remained on a waiting list for many years. During this time, she lacked stable housing and experienced homelessness.

14. On November 19, 2019, Bickerdike Redevelopment Corporation ("Bickerdike"), a nonprofit developer that participates in the CHA's project-based rental assistance program, invited Ms. Walker to apply for a housing opportunity at the Rosa Parks Apartments.

15. Bickerdike owns and manages the Rosa Parks Apartments, eight multifamily housing complexes located in Chicago's Humboldt Park neighborhood.

16. On November 25, 2019, Ms. Walker attended a screening appointment with Bickerdike and presented all requested documentation.

17. As part of the application process, Bickerdike ordered a background check on Plaintiff from Screening Reports.

18. Bickerdike screens applicants according to its "Tenant Selection Plan" ("TSP"). At the time of her application, the TSP allowed Bickerdike to consider criminal convictions that "involved physical violence to persons or property or endangered the health and safety of other persons within the last 10 year(s)."

19. Under the TSP, if an applicant had a conviction involving physical violence to persons or property, Bickerdike had discretion to approve the application after considering mitigating factors, such as the recency of the offense or conviction.

20. In a letter dated December 3, 2019, Bickerdike denied Ms. Walker's housing application because of her criminal record (Exhibit A).

21. Bickerdike told Ms. Walker it had denied her application because of information obtained in Defendant's tenant screening report. Bickerdike provided Ms. Walker a copy of the report on December 3, 2019 (Exhibit B).

22. The tenant screening report indicated Ms. Walker had one conviction for "Criminal Damage to Property < $300." The tenant screening report stated or implied that she was convicted on September 9, 2018 (Exhibit B).

23. The tenant screening report was and is grossly inaccurate. The actual offense date for Ms. Walker's Criminal Damage to Property case is April 7, 2016, and her conviction date is June 13, 2016, the date she entered a guilty plea (Exhibit C). Ms. Walker has had no other arrests, charges, or convictions since that date.

24. The December 3, 2019, denial notice outlined an appeal process to request a review of the decision from Bickerdike's Appeals Committee. Ms. Walker requested an Appeals Committee review on December 19, 2019.

25. After an unsuccessful appeal, Bickerdike finally denied Ms. Walker's application on January 8, 2020.

26. Ms. Walker experienced homelessness since age 18 prior to being selected for the Bickerdike housing opportunity. When Bickerdike denied her application, she had three young children, and she lived in transitional, temporary housing paid for with outside funds. Soon after Bickerdike denied her application, she lost funding for her transitional housing and her landlord provided her a 5-Day Notice to Terminate Tenancy in February 2020.

27. On September 10, 2020, Bickerdike offered Ms. Walker another opportunity to apply for a unit at the Rosa Parks Apartments.

28. In December 2020, Bickerdike approved Ms. Walker's application.

29. On January 8, 2021. Ms. Walker signed a lease for her current residence at a different unit at Rosa Parks Apartments. This was 13 months after Bickerdike denied her initial application to Rosa Parks.

30. On August 26, 2021, Ms. Walker faxed Screening Reports a letter disputing the inaccurate information within her credit file (Exhibit D). In the letter, Ms. Walker demanded Screening Reports investigate her credit file and begin reporting accurate information as it relates to Ms. Walker's Criminal Damage to Property conviction. She also requested the following:

- All information within her file, pursuant to 15 U.S.C. § 1681g(a)(1), and the source of that information, pursuant to 15 U.S.C. § 1681g(a)(2);

- The identification of each person or entity that procured a consumer report for employment purposes within two years or for any other purposes within one year pursuant to 15 U.S.C. § 1681g(a)(3);

- The dates, original payees, and amounts of any checks upon which is based any adverse characterization, included in the file at the time of the disclosure, pursuant to 15 U.S.C. § 1681g(a)(4); and

- A record of all inquiries Defendant had received about her over the last year.

31. Along with the letter, Ms. Walker sent the Certified Statement of Conviction/Disposition from the Cook County Circuit Court (Exhibit C).

32. Screening Reports never responded to Ms. Walker's August 26, 2021 letter.

33. On October 4, 2021, Ms. Walker faxed Screening Reports a letter making the same requests as the August 26, 2021 letter (Exhibit E).

34. Screening Reports never responded to Ms. Walker's October 4, 2021 letter.

## DEFENDANT'S ILLEGAL AND SYSTEMATIC FAILURE TO NOTIFY CONSUMERS OF DISPUTE OUTCOMES

35. Defendant sells criminal background checks and other credit reports to landlords, who then use the reports to evaluate potential tenants.

36. When the subjects of Defendant's criminal background checks and other credit reports dispute the accuracy or completeness of these reports, Defendant routinely ignores consumer disputes and fails to timely notify subjects of the outcome of the dispute.

37. In addition to Plaintiff, Defendant has failed to notify other individuals of the outcomes of their disputes. Examples of this systematic failure to notify include, but are not limited to:

- In July 2021, an Illinois consumer filed a complaint with the Consumer Financial Protection Bureau about the Defendant, writing "I have filed a dispute in regards to the incorrect items on my credit report. It has been well over 30 days and i haven't received any investigation results." https://www.consumerfinance.gov/data-research/consumer-complaints/search/detail/4464442.

- In July 2020, a consumer with a misreported felony on her background check complained to the Better Business Bureau about Defendant. The consumer had sent Defendant supporting court documents to correct her report, and at the time of her Better Business Bureau complaint was "[s]till waiting for them to get back to me to let me know what they find out and again i sent them the court documents did the entire job for them and proved my charge was dismissed and no conviction and i am still waiting. And i need to move but cant be approved until they fix the error." https://www.bbb.org/us/il/wood-dale/profile/employment-background-check/screening-reports-inc-0654-88098726/complaints

- Two years ago, a consumer left a review on Google, saying that she complained to Defendant after she was denied a lease for a faulty credit report. Defendant's "receptionist was extremely rude with little to no customer service skills. I didn't even finish telling her where to direct me before she interrupted me, cut me off & transferred me to a voicemail. Like great, thanks. Never heard back from them after leaving a message." https://www.google.com/maps/place/Screening+Reports/@41.9785596,-87.9842365,15z/data=!4m7!3m6!1s0x0:0xdd656cda2030cef8!8m2!3d41.9785596!4d-87.9842365!9m1!1b1

## CLASS ACTION ALLEGATIONS

38. Plaintiff asserts a claim under 15 U.S.C. § 1681i on behalf of the "Failure to Notify Class," defined as follows:

> All persons who were the subject of a consumer report prepared by Defendant and disputed the accuracy or completeness of the report with Defendant, where Defendant then failed to notify the subjects of the dispute outcome within five days of completing reinvestigation. Class membership begins on the date two years prior to the filing of the original Complaint in this matter and continues through the date on which the Class list is prepared.

39. Numerosity: The Class is so numerous that joinder of all class members is impracticable. Defendant is a large, national company that issues thousands of background checks per year and regularly receives disputes from consumers complaining about inaccuracies in their background checks, credit reports, or other consumer reports. On information and belief, the class includes more than one-hundred individuals.

40. Commonality: Common questions of law and fact predominate over individual issues affecting only individual Class members. The common questions of law and fact include whether Defendant performed reinvestigations upon receiving consumer disputes and then failed

7

to notify consumers of the dispute outcome within five days of completing reinvestigation, thus failing to meet its obligations under 15 U.S.C. § 1681i.

41. Typicality: Plaintiff is a member of the Class, and her claims are typical of the claims of other Class members.

42. Adequacy: Plaintiff will fairly and adequately protect the interests of the Class that she seeks to represent. In addition, Plaintiff's interests in obtaining monetary relief for Defendants' violations of the Class members' rights are consistent with and are not antagonistic to those of any person within the Class.

43. Plaintiff has retained counsel competent and experienced in complex and class action litigation, including FCRA class action litigation and class actions involving workplace and other civil rights.

**COUNT 1**
**Violation of 15 U.S.C. § 1681e(b)**
**On Behalf of Plaintiff**

44. Plaintiff, on behalf of herself, incorporates by reference each of the preceding allegations as though fully set forth herein.

45. When preparing a consumer report, consumer reporting agencies such as Defendant "shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C § 1681e(b).

46. Defendant negligently and willfully violated the provisions of 1681e(b) by incorrectly reporting the Plaintiff's offense date as September 19, 2018, more than two years after June 13, 2016, the date Plaintiff pled guilty to the charge against her. It is impossible for the offense to occur prior to the disposition. The inaccurate report therefore misleadingly suggested that Ms. Walker was convicted in 2018.

8

47. Defendant failed to follow reasonable procedures to assure maximum possible accuracy of the information in Plaintiff's consumer report, including but not limited to the following ways:

    A. Failing to investigate or correct Plaintiff's report when she brought the error to Defendant's attention;

    B. Conflating the events which took place on different dates in a criminal case;

    C. Not using a program or other similar procedures to ensure an arrest date always preceded the conviction date.

48. By making the conviction appear more recent through its failure to assure maximum possible accuracy, Plaintiff lost her subsidized housing opportunity at the Rosa Parks Apartments and suffered emotional distress.

49. Defendant recklessly failed to assure maximum possible accuracy because the Cook County court record clearly reported Ms. Walker's arrest and conviction dates, and a basic computer program or other similar procedure could have ensured that such a mistake would never occur. *See* Exhibit C.

## **PRAYER FOR RELIEF**

Plaintiff asks the Court to enter judgment against Defendants and issue an order as to Count 1:

a. Awarding actual damages sustained as a result of Defendant's negligence pursuant to 15 U.S.C. § 1681o(a)(1);

b. Awarding statutory damages for each violation of not less than $100 and not more than $1,000, as well as punitive damages, pursuant to 15 U.S.C. § 1681n(a);

c. Awarding Plaintiff attorneys' fees and costs pursuant to 15 U.S.C. §§ 1681n(a)(3), 1681o(a)(2);

d. Awarding any further relief as the Court may deem just and proper.

## COUNT 2
### Violation of 15 U.S.C. § 1681i(a)
### On Behalf of Plaintiff and the Putative Class

50. Plaintiff, on behalf of herself and others similarly situated, incorporates by reference each of the preceding allegations as though fully set forth herein.

51. When the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency, the agency "shall, free of charge, conduct a reasonable investigation to determine whether the disputed information is inaccurate." 15 U.S.C § 1681i(a)(1)(A).

52. The agency must conduct a reasonable reinvestigation of the dispute before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer, and either record the current status of the dispute or delete the item from the consumer's file. *Id.*

53. The agency must notify the consumer of the results of the dispute within five business days of completing the reinvestigation. 15 U.S.C § 1681i(a)(6)(A).

54. Defendant willfully violated the provisions of 1681i(a) by not notifying Plaintiff of the outcome of her dispute within five days of completing the reinvestigation triggered by Plaintiff's August 26, 2021 dispute letter.

55. Defendant willfully violated the provisions of 1681i(a) by not notifying Plaintiff of the outcome of her dispute within five days of completing the reinvestigation triggered by Plaintiff's October 4, 2021 dispute letter.

56. Defendant willfully violated the provisions of 1681i(a) by not notifying members of the Failure to Notify Class of the outcomes of their disputes within five days of completing reinvestigation.

**PRAYER FOR RELIEF**

Plaintiff asks the Court to enter judgment against Defendants and issue an order as to Count 2:

a. Awarding statutory damages to Plaintiff and each member of the Failure to Notify Class for each violation of 15 U.S.C. § 1681i(a) of not less than $100 and not more than $1,000, as well as punitive damages, pursuant to 15 U.S.C. § 1681n(a);

b. Certifying Plaintiff's claims as a class action pursuant to Fed. R. Civ. P. 23(c);

c. Appointing Plaintiff as representative of the Failure to Notify Class;

d. Appointing the undersigned counsel as class counsel;

e. Awarding Plaintiff attorneys' fees and costs pursuant to 15 U.S.C. § 1681n(a)(3);

f. Awarding any further relief as the Court may deem just and proper.

**COUNT 3**
**Violation of 15 U.S.C. § 1681g(a)**
**On Behalf of Plaintiff**

57. Plaintiff, on behalf of herself, incorporates by reference each of the preceding allegations as though fully set forth herein.

58. Upon the consumer's request, every consumer reporting agency must clearly and accurately disclose:

a. All information in the consumer's file, 15 U.S.C. § 1681g(a)(1);

b. The source of the information contained in the consumer's file, *id.* § 1681g(a)(2);

c. Identification of each person that procured the consumer's report, *id.* § 1681g(a)(3);

d. The dates, original payees, and amounts of any checks upon which is based any adverse characterization of the consumer, *id.* § 1681g(a)(4).

59. Defendant willfully violated the provisions of 1681g(a) by not making the above disclosures in response to Plaintiff's August 26, 2021 request for disclosure.

11

60.     Defendant willfully violated the provisions of 1681g(a) by not making the above disclosures in response to Plaintiff's October 4, 2021 request for disclosure.

## PRAYER FOR RELIEF

Plaintiff asks the Court to enter judgment against Defendants and issue an order as to Count 3:

a. Awarding statutory damages for each violation of not less than $100 and not more than $1,000, as well as punitive damages, pursuant to 15 U.S.C. § 1681n(a);

b. Awarding Plaintiff attorneys' fees and costs pursuant to 15 U.S.C. §§ 1681n(a)(3);

c. Awarding any further relief as the Court may deem just and proper.

Dated: December 2, 2021             Respectfully submitted,

/s/ Christopher Wilmes

*One of the attorneys for Plaintiffs*

Elizabeth Malik
beth@chicagohomeless.org
Patricia Nix-Hodes
patricia@chicagohomeless.org
LAW PROJECT OF THE CHICAGO COALITION
FOR THE HOMELESS
70 E. Lake St., Suite 720
Chicago, IL 60601
(312) 641-4140

Eric Sirota
esirota@povertylaw.org
SHRIVER CENTER ON POVERTY LAW
67 E. Madison St., Suite 2000
Chicago, IL 60603
(312) 263-3830

Christopher Wilmes
cwilmes@hsplegal.com
Tex Pasley
tpasley@hsplegal.com
HUGHES SOCOL PIERS RESNICK & DYM, LTD.
70 W. Madison St., Suite 4000
Chicago, IL 60602
312.580.0100
312.580.1994 (fax)